CASE No. 1094.

TOWNSEND v. BROWN.

1. A married woman signed, sealed and delivered, with her husband, in 1872,
   a quit-claim deed to a tract of land "in token of her renunciation and re-
   lease of all right of dower in the premises." *Held,* that she was not
   thereby barred of her dower in this land.

2. The purpose of Section 8, of Article XIV., of the Constitution of 1868, was to protect the property of a married woman from liability for her husband's debts, and to release it from his control, but not to confer new powers by a change of her legal status. This section, therefore, has no application to the wife's right of dower.

3. If the constitution had made a married woman *sui juris* in all respects, the legislature might still require her privy examination as evidence of her signature to a deed.

4. The power given to a married woman by Section 2, of Chapter C., of the General Statutes, to execute all deeds, &c., in the same manner, &c., as if she were unmarried, relates only to her separate property.

5. The act of 1795 (5 *Stat.* 256), and the act of 1870 (14 *Stat.* 325), having been both re-enacted in the General Statutes, (Chap. LXXXIII., §§ 3, 4, and Chap. C., § 2,) must be so construed as to make each of them effectual; and they have been so regarded by the general assembly, as is shown by subsequent legislation.

6. A privy examination of the wife is a condition precedent to an effectual renunciation of dower.

Before FRASER, J., Barnwell, September, 1879.

The case is stated in the brief as H. F. Townsend against Simon Brown and others, *In re* M. M. Duncan, demandant, against Simon Brown, defendant. The only point of the case stated in the brief, or noticed in the Circuit decree, is the question of Mrs. Duncan's right to dower in a tract of land known as the Philip Walker tract, conveyed to Brown by J. G. W. Duncan for value in 1870. In 1872, J. Allen Duncan executed a deed wherein, after reciting the deed of J. G. W. Duncan, his father, and stating that it was made under the belief that his father was owner in fee of the land, (whereas he was only entitled to a life-estate, with remainder to J. A. Duncan,) he, in consideration of the premises and five dollars, remised, released and quit-claimed unto Simon Brown, his heirs and assigns, this same tract of land, then in Brown's possession. Mrs. Duncan's name appears only in the conclusion which is stated in the opinion of this court.

The Circuit decree was as follows:

It seems never to have been questioned that a woman, by an ante-nuptial contract, could bar herself of the right of dower, and the statutes prescribing the mode of release by a married

woman were passed merely to remove a disability growing out of her condition as a married woman. The general power of alienation conferred by the present constitution cannot be restricted to any one *mode* which may be prescribed by an act of the legislature, even if it should be held that such was the proper construction of the act on the subject of release of dower. If the words used were only an agreement to release dower, a very serious question might arise as to the constitutionality of the act which enlarges the powers of a married woman so as to make her a *feme sole* in all matters of contract. In the view which I take of the words used in the deed of her husband by Mrs. Duncan, they amount to a confirmation of his deed by a release of her right of dower, and are an *alienation* in the sense of the constitution, and she is thereby barred of her right of dower.

It is, therefore, ordered and adjudged that Mrs. Madeline M. Duncan is barred of her right of dower in "the Philip Walker tract," and that the other parties to the action have leave to apply for such further orders as may be necessary for the protection of their interests in the progress of the case for the adjustment of the rights of parties to the action.

From this decree, Mrs. Duncan appealed. Her exceptions are not stated.

*Messrs. J. C. Davant* and *F. W. Fickling,* for appellant.

*Mr. John J. Maher,* contra.

If the deed were ineffectual as a release, it could be supported as a bargain and sale under the statute of uses. 4 *Kent* 465; 6 *S. C.* 479; 6 *N. Y.* 222. But the words of the deed, and the possession of Brown, make the deed operative as a release. *Shep. Touch.* 319; 2 *Bl. Com.* 324; *Jac. Dict.* tit. Release. If not under disability of coverture, the form is effectual. 4 *McC.* 203. Dower right is only a chose, and, as such, assignable. 4 *Rich.* 517. And releasable. 14 *Rich. Eq.* 289. At common law, dower was barred by fine or recovery. *Park Dow.* 192;

2 *Bl. Com.* 348, 355; 5 *Cruise Dig.*, tit. 35, §§ 7, 8, 9; 1 *Macq. Husb. & W.* 28. Her separate examination was required because she was under the power and authority of her husband, not for want of reason and discretion. 3 *Atk.* 695; 2 *Kent* 149. The private examination in this State took the place of fines. 3 *Stat.* 302; 7 *Stat.* 196, 233; 5 *Id.* 256; 14 *Rich. Eq.* 290. Under the law, prior to 1868, this deed would be ineffectual to bar dower; but not since the constitution of that year. That statutes in derogation of common law are to be construed strictly is a rule not applicable to a constitution. *Sedgw. Stat. & Const. L.*, notes 267, 268; *Cooley Const. Lim.* 60. This rule is now applied with much discrimination, even in the construction of statutes, which are often remedial, and such are the statutes removing the disabilities of married women. *Sedgw.*, note 271; 2 *N. & McC.* 147; 1 *Bl. Com.* 445; 6 *Am. L. Rev.* 57. A liberal construction obtained in *Witsell* v. *Charleston*, 7 *S. C.* 88. A literal interpretation would not remedy the evils which resulted in 1 *Brev.* 486; 2 *N. & McC.* 147; 5 *Rich. Eq.* 531; 9 *Rich. Eq.* 119. The constitutional provision conferred upon the woman absolute power over all her property, whether formerly subject to the husband's marital rights or not. The intention was to put married women on same footing with all other persons *sui juris.* Separate property was not used in its technical sense. She is now recognized as able to think and act for herself. A privy examination would be a badge of former inferiority. If she has power to dispose of property in possession, she has the same power as others to dispose of expectant and contingent interests, and even of an inchoate right of dower. 7 *S. C.* 88; *Spears Eq.* 49; 12 *Rich. Eq.* 376; 2 *Jarm.* 181; 9 *Ind.* 202; 21 *Ill.* 171; 10 *S. C.* 428; 12 *S. C.* 465; 2 *Hill Ch.* 564; 3 *Paige* 440; 13 *Pet.* 107; 2 *Scrib. Dow.* 8; *Park Dow.* 237; 3 *Strobh.* 81. These authorities show that the inchoate right of dower is property. But for the wife's disability, it would always have been alienable by release, and this disability was for her own protection against her husband's influence; but now she is *sui juris.*

The act of 1870, repealed by implication the act of 1795. The re-enactment of the two acts, in the General Statutes,

enables the wife to relinquish her dower under the act of 1795, before an officer, or to release it under the act of 1870 by formal deed.

October 3d, 1881. The opinion of the court was delivered by

McIVER, A. J. On the 4th of October, 1872, J. Allen Duncan made a quit-claim deed to respondent, Simon Brown, for a certain tract of land, which deed concluded as follows: "In testimony whereof, I, the said J. Allen Duncan, and my wife, Madeline M. Duncan, in token of her renunciation and release of all right of dower in the premises, hereunto set our hands and seals, the day and year hereunto written, to wit, 4th October, 1872." The deed was signed and sealed, and purports to have been delivered by Mr. and Mrs. Duncan in the presence of two witnesses, and was duly proved and recorded. After the death of J. Allen Duncan, his widow, the said Madeline M. Duncan, set up a claim for dower in the premises described in the deed. The Circuit judge held that under the provisions of the constitution of 1868, the execution of the deed by Mrs. Duncan was effectual to bar her of her dower, and from his judgment this appeal has been taken. So that the only question raised here is whether Mrs. Duncan is barred of her dower by reason of having executed the above-mentioned deed.

It is conceded that prior to the adoption of the present constitution the appellant would not have been barred of her dower, and the inquiry, therefore, is whether there is anything in the constitution of 1868, or any act passed in pursuance of its provisions, which will render the execution of said deed effectual to bar her of her dower. The portion of the constitution relied on for the purpose is Section 8, Article XIV., which is in the following words: "The real and personal property of a woman, held at the time of her marriage, or that which she may thereafter acquire, either by gift, grant, inheritance, devise or otherwise, shall not be subject to levy and sale for her husband's debts, but shall be held as her separate property, and may be bequeathed, devised or alienated by her the same as if she were unmarried; provided, that no gift or grant from the husband to the wife shall be detrimental to the just claims of his creditors."

The leading object of the section just quoted appears to have been to relieve the property of the wife from liability for the husband's debts, and to release it from any control by the husband; for the first provision is to exempt the wife's property from levy and sale for the debts of the husband, and the second is to authorize the wife to dispose of her property without, or even against, the consent of the husband. The real purpose, therefore, does not appear to have been to confer any new powers upon a married woman by changing her legal status, but simply to protect her property from liability for her husband's debts, and to release it even from the partial control of the husband by dispensing with the necessity which had previously existed of obtaining his assent and concurrence before her property could be disposed of. These seem to have been the sole purposes of the clause in question, and as they can be fully accomplished without, in any manner, affecting any of the other relations between husband and wife growing out of marriage, we think we are bound to confine the operation of this clause of the constitution to its declared and manifest objects. If it be so confined, then, it is obvious that the clause in no way applies to the wife's right of dower—a right which the law has always regarded as an object of watchful solicitude and jealous care—for it is not, and could not, in any way be made liable for the husband's debts, nor could it in any way be made subject to the marital rights of the husband, and thus render necessary his assent to and concurrence in any disposition of it. We think it clear, therefore, that the above-mentioned section of the constitution was never designed to apply to the wife's right of. dower, and that it cannot have the effect of rendering valid, as a renunciation of dower, the deed of October 4th, 1872.

But even if it should be conceded that the object and effect of this clause of the constitution was to make a married woman *sui juris* in all respects, we see no reason why the legislature might not require a privy examination of the wife as evidence of the fact that she had really signed the deed, just as it might require the deed of a corporation or a partnership to be executed with certain particular formalities, as the only conclu-

sive evidence of the fact that such deed was, in fact, the deed of the corporation or partnership.

It is contended, however, that if the constitution does not render the conveyance effectual as a renunciation of dower, the act of January 27th, 1870, (14 *Stat.* 325, incorporated in the *Gen. Stat., Chap. C.*, p. 482,) does.

Without stopping now to consider whether this act, in so far as it purports to go beyond the constitution and confer upon married women other powers than those specially provided for in that instrument, can be regarded as constitutional— a question which has been made the subject of grave argument in another case now before us[*]—and without intending now to indicate any opinion upon that question, but assuming, for the present, the constitutionality of the act, we will proceed to examine the act with a view to ascertain whether it contains any provision which will give it the effect contended for. The particular section of the act relied upon for this purpose is the second, which is in the following words: "A married woman shall have power to bequeath, devise or convey her separate property in the same manner and to the same extent as if she were unmarried; and if, dying intestate, her property shall descend in the same manner as the law provides for the descent of the property of husbands; and all deeds, mortgages and legal instruments of whatever kind shall be executed by her in the same manner, and have the same legal force and effect as if she were unmarried." These last words of the section by which it is provided that all deeds, mortgages and legal instruments of whatever kind shall be executed by a married woman, in the same manner as if she were single, it is contended, dispenses with the necessity for the privy examination required, in case of a renunciation of dower, by the act of 1795, incorporated in *Gen. Stat., Chap.* 83, p. 429. To give such an effect to these words would violate fundamental rules of construction. It will be observed that the act of 1870, as originally passed, does not, in terms, repeal the provisions of the act of 1795 in reference to the mode by which a married woman could renounce her dower,

[*] See *Pelzer, Rodgers & Co.* v. *Campbell & Co.*, 15 *S. C.* 581.—REPORTER.

nor does it, in any way, refer to that act, but, on the contrary, its provisions seem to be confined to the kind of property therein spoken of—that is, such property as could be levied on and sold for the debts of the husband, from which it is declared exempted and is designated as the wife's "separate property." Then, in the second section, provision is made for the manner in which *such property*—that which had just been designated as the wife's "separate property"—may be disposed of. Hence, the proper reading of this section would be that "all deeds, mortgages and legal instruments of whatever kind," pertaining to the property just spoken of, "shall be executed in the same manner and have the same legal force and effect as if she were unmarried."

Again : after the passage of the act of 1870, it, as well as the act of 1795, by which the privy examination of the wife was required to render a renunciation of dower effectual, was incorporated in the General Statutes, and, therefore, by well-settled rules of construction, we must, if possible, so construe the provisions of each as to make them both effectual, and this can be done by giving to the act of 1870 the construction which we have placed upon it, by which both acts are given full force and effect in the sphere within which each was designed to operate.

It will not do to say, as has been said, that these two acts thus incorporated into the General Statutes may be harmonized by construing them both as merely permissive, and that a married woman is not restricted to the mode of relinquishment provided for in either of these acts, but may, at her option, adopt either mode, and the one so adopted shall be effectual ; for, besides the fact that such a construction would practically emasculate the act of 1795, and render its provisions wholly ineffectual and nugatory, it is sufficient to say that the provisions of the act of 1870 are mandatory—" *shall* be executed by her in the same manner," &c.—and could not, therefore, be disregarded with impunity.

There not only never has been any intimation of a design to repeal or annul the provisions of the act of 1795 in regard to the mode by which a married woman could release her right of dower, but exactly the contrary appears. In less than one year after the adoption of the General Statutes, the legislature, by the act of 29th January, 1873, (15 *Stat.* 324,) repealed those

sections of Chapter 83 of the General Statutes, providing a mode by which a married woman might convey any real estate in which she had an estate of inheritance, doubtless for the reason that the mode by which a married woman could convey her real estate was sufficiently provided for by the constitution and the act of 1870, but they left untouched those sections of the same chapter providing the mode by which a married woman might release her inchoate right of dower in lands of which her husband might be seized during coverture, thus plainly showing, not only that the legislature did not regard the provisions of the act of 1795, in reference to dower, as affected by the constitution, but, what is more important, exhibiting an unmistakable purpose *not* to repeal the provisions in reference to dower, and an intention that the provisions of the act of 1870 were not to apply in cases of renunciation of dower.

We see nothing in the constitution or in the act of 1870 which can have the effect of depriving a married woman of the safeguard which the law has, from time immemorial, thrown around her highly favored right of dower by requiring a privy examination as a condition precedent to an effectual renunciation of dower, and we are, therefore, of opinion that the conveyance executed by Mrs. Duncan cannot have the effect of barring her of her right to dower in the premises described in such conveyance.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for such further proceedings as may be necessary.

SIMPSON, C. J., and McGOWAN, A. J., concurred.